IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARK ALLEN CROW, §
TDCJ #01984309, §
 §
       Plaintiff, §
 §
v. § CIVIL ACTION NO. H-17-1923
 §
DAVID MBUGUA, et al., §
 §
       Defendants. §

## MEMORANDUM OPINION AND ORDER

Pending before the court is the Proposed Amended Complaint with Jury Demand ("Second Amended Complaint") (Docket Entry No. 29) filed under 42 U.S.C. § 1983 by state inmate Mark Allen Crow, who alleges that he has been denied adequate medical care for the Hepatitis C Virus while in prison. At the court's request Crow has supplemented his pleadings with Plaintiff's More Definite Statement (Docket Entry No. 31); and the State Attorney General's Office has provided a report under Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978) ("Martinez Report") (Docket Entry No. 36), which includes more than 600 pages of medical records and an affidavit from a specialist about the care Crow has received. Crow has filed a response in opposition to the Martinez Report (Docket Entry No. 38). After reviewing all of the pleadings and the applicable law, this case will be dismissed for the reasons explained below.

## I. Background

The plaintiff, Mark Allen Crow, has been confined in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") since 2015.[1] In October of 2016 Crow was assigned to the Terrell Unit in Rosharon, Texas, where he remains incarcerated.[2] Crow sues the following health care providers employed by TDCJ at the Terrell Unit or at the University of Texas Medical Branch ("UTMB") in Galveston: Nurse Practitioner David Mbugua, Dr. Kwabena Owusu, Registered Nurse Sandra Smock, Nurse Practitioner Victoria Williams, Physician's Assistant Patrick Muldowney, Nurse Practitioner Adapbi Nwafor, Dr. John Ojo, Chief Medical Officer Selwyn Rogers, Chief of Staff Sheila Lidstone, and Special Practice Manager Jose Gonzalez.[3]

Crow explains that he was diagnosed with the Hepatitis C Virus ("HCV") in 2001.[4] HCV is an infectious disease that can remain dormant and asymptomatic for decades,[5] but may progress to cause

---

[1] Plaintiff's More Definite Statement, Docket Entry No. 31, p. 1. Crow discloses that he was admitted to TDCJ most recently in March of 2015, with previous terms of confinement in 2009, 1998, and 1996. See id. at 1-2.

[2] Id. at 2.

[3] Second Amended Complaint, Docket Entry No. 29, pp. 2-3.

[4] Plaintiff's More Definite Statement, Docket Entry No. 31, p. 3.

[5] Silja J.A. Talvi, Hepatitis C: A "Silent Epidemic" Strikes U.S. Prisons, in PRISON NATION 181 (Tara Herivel and Paul Wright, eds., 2003) ("Because the virus often causes no noticeable symptoms for up to 20 or 30 years after infection, most of those who are infected have no idea they are living with hepatitis C.").

serious liver damage, including fibrosis or cirrhosis.⁶ Crow also suffers from epilepsy, hypertension, post-traumatic stress disorder ("PTSD"), and major depressive disorder.⁷

In February of 2017 Crow requested treatment in the form of an antiviral drug known as "Harvoni," which he describes as a medication used to cure HCV.⁸ In October of 2017 Crow was examined by Dr. Owusu for a "chronic care appointment" at the Terrell Unit.⁹ Dr. Owusu reviewed Crow's test results and advised Crow that he did not meet the criteria for treatment under the guidelines set out in the Correctional Managed Health Care ("CMHC") Infection Control Manual.¹⁰ Although Dr. Owusu subsequently referred Crow to an HCV specialist at UTMB for an evaluation, which took place in March of 2018, Crow claims that treatment has been delayed because medical

---

⁶See id.; see also Andrew Brunsden, Comment, Hepatitis C in Prisons: Evolving Toward Decency Through Adequate Medical Care and Public Health Reform, 54 U.C.L.A. 465, 473-74 (2006) (observing that persons who develop chronic HCV infection are at risk for developing various degrees of liver fibrosis or scarring, inflammation, and potentially cirrhosis, which can result in "end-stage liver disease").

⁷Plaintiff's More Definite Statement, Docket Entry No. 31, pp. 7-8.

⁸Id. at 4 ¶ 5(a).

⁹Id. at 3.

¹⁰Id. The State Attorney General's Office has provided a copy of the CMCH Infection Control Manual, Hepatitis C Policy No. B-14.13.3 (eff. April 3, 2017), Exhibit B to Martinez Report, Docket Entry No. 36-2, pp. 1-13.

providers have determined that other HCV-infected prisoners in worse condition have higher priority.[11]

Crow contends that the defendants are liable because he has been denied any form of treatment for HCV in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.[12] Invoking 42 U.S.C. § 1983, he requests declaratory and injunctive relief in the form of treatment, as well as compensatory and punitive damages and costs.[13]

## II. Standard of Review

Because the plaintiff is a prisoner who proceeds in forma pauperis, this civil action is governed by the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B), which requires a reviewing court to screen and dismiss a complaint, in whole or in part, if the court determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See also 28 U.S.C. § 1915A(b) (listing the same grounds). A complaint is considered frivolous if it "lacks an arguable basis

---

[11]Id. at 3-4; Plaintiff's Opposition Regarding Martinez Report ("Plaintiff's Opposition"), Docket Entry No. 38, pp. 2-3; see also Affidavit of Jessica S. Khan, M.D. ("Khan Affidavit"), Exhibit A to Martinez Report, Docket Entry No. 36-1, pp. 12-13 (explaining the process used by medical providers to prioritize the many prisoners found in the TDCJ population who are infected with HCV).

[12]Second Amended Complaint, Docket Entry No. 29, p. 4.

[13]Id. at 4-5.

either in law or in fact." Neitzke v. Williams, 109 S. Ct. 1827, 1831-32 (1989); Carlucci v. Chapa, 884 F.3d 534, 537 (5th Cir. 2018). An administrative report submitted by state officials pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978), is a tool to assist courts in making a determination of frivolity under 28 U.S.C. § 1915. See Norton v. Dimazana, 122 F.3d 286, 292-93 (5th Cir. 1997); see also Cay v. Estelle, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a Martinez report).

The court is mindful of the fact that the plaintiff proceeds pro se in this case and has allowed him more than one opportunity to amend or supplement his pleadings.[14] Courts are required to give a pro se litigant's contentions, however inartfully pleaded, a liberal construction, holding them to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972). Even under this lenient standard pro se litigants must abide by the rules that govern the federal courts and must properly plead facts that state a plausible claim to relief. See E.E.O.C. v. Simbaki, Ltd., 767 F.3d 475, 484 (5th Cir. 2014). To demonstrate plausibility a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Carlucci, 884 F.3d at 538 (citation and internal quotation marks omitted).

---

[14]See Prisoner's Complaint Under the Civil Rights Act ("Complaint"), Docket Entry No. 1; Proposed Amended Complaint with Jury Demand ("First Amended Complaint"), Docket Entry No. 10; Second Amended Complaint, Docket Entry No. 29; Plaintiff's More Definite Statement, Docket Entry No. 31.

## III. Discussion

Crow's primary contention is that he has been denied adequate medical care in the form of antiviral medication, specifically, Harvoni, to treat his HCV. To state an actionable claim in this context a prisoner must demonstrate that the defendants violated the Eighth Amendment by acting with "deliberate indifference to a prisoner's serious illness or injury[.]" Estelle v. Gamble, 97 S. Ct. 285, 291 (1976). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S. Ct. 1970, 1984 (1994); Jones v. Texas Dep't of Criminal Justice, 880 F.3d 756 (5th Cir. 2018).

The Eighth Amendment deliberate-indifference standard is an "extremely high" one to meet. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). A showing of deliberate indifference in this context requires the prisoner to demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly

evince a wanton disregard for any serious medical needs." Id. (citation and internal quotation marks omitted).

In response to Crow's allegations, the State Attorney General's Office has supplied an affidavit from Dr. Jessica S. Khan, who serves as the Director for Clinical Virology at UTMB and is an infectious disease specialist.[15] In addition to Dr. Khan's affidavit, which summarizes the care that Crow has received for his various medical conditions during the time relevant to this suit, the State Attorney General's Office has also provided voluminous medical records that confirm that Crow has received regular medical care at the Terrell Unit, where health care providers continue to monitor his HCV.[16] The records confirm that Dr. Owusu referred Crow to the UTMB HCV Clinic on January 8, 2018,[17] in accordance with treatment guidelines for HCV found in the CMHC Infection Control Manual.[18] Dr. Khan explains that the referral was made after TDCJ revised its treatment guidelines for HCV in the CMHC Infection Control Manual, allowing unit providers to refer more patients for

---

[15] Khan Affidavit, Exhibit A to Martinez Report, Docket Entry No. 36-1, pp. 2-14.

[16] Exhibits 1-20 to Khan Affidavit, Docket Entry No. 36-1, pp. 15-137; see also Exhibits C and D to the Martinez Report, Docket Entry No. 36-3, pp. 1-447 and Docket Entry No. 36-4, pp. 1-46.

[17] CMHC Clinic Notes, Exhibit 19 to Khan Affidavit, Docket Entry No. 36-1, pp. 129-32.

[18] CMHC Infection Control Manual, Hepatitis C Policy No. B-14.13.3 (eff. April 3, 2017), Exhibit B to Martinez Report, Docket Entry No. 36-2, pp. 2-13.

evaluation who would not have qualified under the former version of that policy.[19]

Crow was evaluated by a specialist at the HCV Clinic on March 12, 2018, where the provider ordered continued monitoring, laboratory testing to confirm Crow's HCV genotype for potential treatment, and a follow-up examination in seven months.[20] According to Dr. Khan, Crow's test results show that he has only minimally elevated liver enzymes and has not exhibited significant disease progression or complications related to HCV, such as fibrosis or cirrhosis.[21] Because Crow has not exhibited significant disease progression, he has been identified as a "Tier 3 treatment candidate" and is being monitored for treatment with direct-acting antiviral medication on a prioritized basis with other HCV-infected TDCJ prisoners according to current guidelines developed in compliance with evolving standards of care recognized by the American Association for the Study of Liver Diseases ("AASLD") and the Infectious Disease Society of America ("IDSA").[22]

---

[19]Khan Affidavit, Exhibit A to Martinez Report, Docket Entry No. 36-1, p. 11 & n.30.

[20]CMHC Hepatitis via Telehealth Note, Exhibit 20 to Khan Affidavit, Docket Entry No. 36-1, p. 136. Dr. Khan explains that there are multiple "genotypes and subtypes" of HCV, requiring different treatment regimens. See Khan Affidavit, Exhibit A to Martinez Report, Docket Entry No. 36-1, p. 12 n.35.

[21]Khan Affidavit, Exhibit A to Martinez Report, Docket Entry No. 36-1, p. 12.

[22]Id. at 12-13.

Crow acknowledges that Dr. Owusu referred him for evaluation by specialists with the HCV Clinic in Galveston and that he has been identified for treatment as a Tier 3 candidate under guidelines developed by medical providers.[23] Crow nevertheless complains that other prisoners are receiving treatment ahead of him on a priority basis, arguing that this constitutes an actionable denial of care.[24]

Because the decisions regarding Crow's need for treatment have been made by specialists with the HCV Clinic in Galveston, Crow has not articulated facts showing that any of the defendants named in his Second Amended Complaint have the requisite personal involvement in the alleged violation. Dr. Khan clarifies that due to "increasing complexity of treatment" and the risk of developing resistance, UTMB employs specially trained providers to treat HCV, and only those specialists at the HCV Clinic can prescribe HCV medication.[25] Absent the requisite personal involvement with the treatment decision at issue, Crow fails to state a claim against any of the defendants named in the Second Amended Complaint. See Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a [42 U.S.C. § 1983] cause of action.").

---

[23] Plaintiff's Opposition, Docket Entry No. 38, pp. 2-3.

[24] See id.

[25] Khan Affidavit, Exhibit A to Martinez Report, Docket Entry No. 36-1, p. 12 n.35.

More importantly, the medical records refute Crow's claims that he has been denied treatment. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) (per curiam) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."); McCord v. Maggio, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference claim where extensive medical records document that the prisoner was not denied medical attention). To the extent that Crow disagrees with any particular medical determination or the level of care that he has received, a prisoner's disagreement with treatment decisions does not state an actionable claim under the Eighth Amendment. See Gobert, 463 F.3d at 346; see also, e.g., Hendrix v. Aschberger, 689 F. App'x 250, 250 (5th Cir. 2017) (per curiam) (holding that a Texas prisoner's disagreement with medical providers, who failed to provide him with medications that could cure his HCV, was insufficient to show a constitutional violation); Grumbles v. Livingston, 706 F. App'x 818, 820 (5th Cir. 2017) (per curiam) (observing that neither a prisoner's disagreement with a treatment approach nor his opinion that he should have received a certain treatment for HCV raises a viable claim of deliberate indifference or a violation of the Eighth Amendment). Because Crow has had more than one opportunity to amend his original Complaint, this action will be dismissed for failure to state a claim upon which relief may be granted under 42 U.S.C. § 1983.

## IV. Conclusion

Based on the foregoing, the court **ORDERS** as follows:

1. This action will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

2. The dismissal will count as a **STRIKE** for purposes of 28 U.S.C. § 1915(g).

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties of record.

**SIGNED** at Houston, Texas, on this 8th day of November, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE